Good morning. May it please the Court, my name is Rex Heineke with my colleague Marty Brimmage. I'm here on behalf of the appellant ASARCO. We believe that the answer to this question, or this case, is contained in this Court's decision in West Coast Telephone. In that case, this Court held that an arbitrate, and I quote, the arbitration clause of the contract expressly provides that the arbitration or arbitrator shall have no power to destroy, change, add to, or delete from its terms, unquote. And that is precisely what is the situation here. The arbitrator determined that there was a mutual mistake, and then wrote in two sentences, five lines, to the collective bargaining agreement. Why don't we have to defer to that decision? You submitted it to the arbitrator, and except in rare and unusual circumstances, we have to defer. Well, certainly that's correct, Your Honor, but I think this is one of those rare circumstances, because the provision in the collective bargaining agreement was not being interpreted, and it is unequivocal and absolutely clear. This is like this Court's decisions, for example, in the Phoenix newspaper case, where the arbitration agreement said that the arbitrator could only order the parties to negotiate wages. And, in fact, what the arbitrator did was decided what the amount of the wages should be when the parties couldn't agree. That was contrary to the express language of the agreement. An arbitrator simply cannot do something that the parties have agreed is beyond the arbitrator's power. And the parties here agreed that the arbitrator could not add to the agreement, and yet that's what they did. You didn't stipulate to arbitration, then, on the issue of mutual mistake if the arbitrator had no power to adjudicate that issue. Well, two things. First is I do not believe that we stipulated to the termination of mutual mistake. You stipulated to give this case to the arbitrator, right? We didn't stipulate. We went to the arbitrator. Okay. You didn't disagree to arbitrate. You didn't contest the arbitrator's jurisdiction to hear the case. Oh, yes, we did. What was the question submitted to the arbitrator? The question submitted to the arbitrator was whether ASARCO had breached the collective bargaining agreement by failing to pay this copper bonus. The question submitted to the arbitrator was not whether there was a mutual mistake. That evolved during the arbitration. Did you ask the arbitrator to consider the scope of the no-add provision? No, we did not. We said that the arbitrator should not, and had no power to do so. The union did, but we said that the arbitrator had no power to amend the agreement, to add to the agreement. We said that repeatedly. We didn't dispute that setting aside — I mean, you argued a lack of jurisdiction — Yes. — to the arbitrator. Yes. You didn't simply say, look, it's none of your business, we're not going to argue this before you. Well, we simply said, you don't — I mean, argue it. We said, you do not have jurisdiction. You cannot go forward on that. I'm sorry. How is that different? Well, we didn't go in and say, we want you to decide what your jurisdiction is. We simply said, you don't have any jurisdiction in this situation. And that's exactly what was upheld. You're familiar with TriStar Pictures, right? I'm sorry? Yes, Your Honor. Okay. How is it different from TriStar Pictures? Because I don't think in TriStar — in TriStar Pictures — Well-written opinion, don't you think? I'm sorry? Well-written opinion, don't you think? Certainly, Your Honor. I know you wrote it. But how is it different? I think the difference there is that the employer submitted the entire dispute to the arbitrator, said you don't have any jurisdiction over this, but then went forward and arbitrated the entire dispute. We said, you can decide whether on the face of it the collective bargaining agreement has been breached, but what you cannot do and what you don't have jurisdiction to do is change the agreement by adding a provision to it. How is that different from making that argument to the arbitrator? You've argued to the arbitrator. You don't have jurisdiction. So why haven't you then submitted that issue to the arbitrator by arguing it? Well, I think if we can't go into an arbitration and say, you have no jurisdiction, then we have to just not participate in the arbitration at all. You can say beforehand, look, we don't think you have jurisdiction. We will go ahead and participate. But it's different from going to the arbitrator and saying, hey, you have no jurisdiction. At the point that you ask the arbitrator to make that decision, you submit it to the arbitrator. We didn't ask him to decide anything. We just said you don't have jurisdiction. You ask him to decide that he has no jurisdiction on that issue. That's what you ask him to decide. I don't see how that's any different from trying to stop pictures. Because I think we reserve this particular issue. Did the arbitrator construe the no-add provision in his opinion? No. He simply recognized what he said was ordinarily this would bar me from doing anything. But under the circumstances of this case, I believe that I can go forward and ignore the no-add provision. So his decision to reformat or reformulate or to add to was contrary to the no-add provision. Is that correct? Exactly. But he didn't say that. He's construing the no-add provision to have an exception in it for reformation. No. Okay. I didn't see any mention of the no-add provision at all by the arbitrator. Is that correct? No, I don't think that's correct. I think he said what I said. I may have paraphrased it. He said basically there is a no-add provision. Ordinarily I couldn't add anything. But under the circumstances here, I believe that I can. Okay. In your opponent's brief, he says on page 10, At the outset of the hearing, the party stipulated that the matter was properly before the arbitrator and that the arbitrator had jurisdiction to decide the grievances. Are you saying that's incorrect? They cite to the record here. I think it's an overstatement of what we said and what the issue was presented to the arbitrator. We didn't dispute that the arbitrator. SCR 197. We didn't dispute the arbitrator could look at the collective bargaining agreement and on its face say whether or not the union had a valid grievance and whether or not we had violated the collective bargaining agreement. But what we did say was the arbitrator in doing that had no jurisdiction to add to the agreement. You've got about two minutes left. All right. Well, I'm just reading from 197 that my good friend here was able to locate in this pile. The arbitrator says, So let the record show that the parties have agreed that the matter is properly before the arbitrator. Right. The matter before the arbitrator was had there been a breach of the agreement. And the union's first position was there's been a mutual mistake and you had a six-day hearing about that mutual mistake, which it almost jumps out from you from the context. Yes. They put on evidence. We didn't put any evidence on about mutual mistake because it said the arbitrator had no jurisdiction. If I could add one other thing, even if I'm wrong about that, and even if that issue was decided by the, that is the jurisdictional issue, even if we submitted it to the arbitrator and the arbitrator decided it, the district court could review that decision, admittedly under a deferential standard. But we submit under that deferential standard the arbitrator's decision to add a provision to the collective bargaining agreement violated the agreement even under the deferential standard and must be reversed. And you should have contested the jurisdiction of the arbitrator to hear the grievance altogether. Once the arbitrator hears the grievance, it's the arbitrator's jurisdiction, if you will, to determine the breadth of that jurisdiction. But even assuming that's what happened, we can seek review of that. And the standard of review, we admit, is a deferential one. But the arbitrator doesn't have unlimited power to say, my jurisdiction is whatever I say it is. But once he finds a mutual mistake, then what remedy could he have other than reforming the contract? Could he direct the parties to go back and change it? No. We do not believe he had any power to do anything. So they had to go to court under Wesco's telephone. They had to go to court. Yes. And you can go to court. We don't dispute that the union can go to court. This is a question of where is this dispute to be decided. Is it to be decided under arbitration rules, or is it to be decided under court rules? And the reason people have these kinds of provisions in arbitration agreements is because they know that if the arbitrator decides something, their chances of reversing it on appeal are quite limited. And therefore, they want to limit the power of an arbitrator. Arbitration is purely a matter of contract. It's what the parties agree the arbitrator's powers are. And what the parties agreed to here was the arbitrator could not add anything to the arbitration agreement. All the more reason for you to have objected to the jurisdiction of the arbitrator to hear the grievance at the first. I think we did, but even if I'm wrong. No, you didn't. All right, even if I'm wrong about that, all that means is that there's a deferential standard of review here. It doesn't mean that the question of whether the arbitrator had jurisdiction is waived. You're saying that the arbitrators, even if the question of reformatting was given to the arbitrator, the arbitrator's decision doesn't, whatever the language is, take its essence from the language of the agreement because of the no-add provision. Do I have your argument? Exactly, because it contravenes an express provision of the agreement. Okay, thanks. Thank you. Thank you. Good morning, Your Honors. Michael Weiner on behalf of the Appellee Union. I'd begin by addressing some of the points that my colleague made. First off, the arbitrator did construe the no-add provision. He cited it as a relevant provision. I didn't see an interpretation of it, so maybe you could tell me where I should look to see an interpretation of the no-add provision. You're correct, Your Honor, that he did not explicitly state that he was interpreting that provision, but he did cite it as a relevant provision of the contract, and that's at ER 244. And so what exactly did he say about that? He noted that it was in there, but he didn't construe it. He didn't say that he had – did he have any construction of it? Yes. He didn't explicitly note that he was construing the no-add provision. Where is that? Can you point me to the language? Sure. That's at – if Your Honor will give me a moment. So at ER 259, he says, arbitrators, including the present one, generally recognize that our authority does not normally permit us to rewrite a collective bargaining agreement or ignore its provisions. And then he goes on to say, but when the party carries what he called its heavy burden of establishing a mutual mistake, then it does. So he doesn't reference the no-add provision there. That's what I thought as well. Right. He references it. I mean, he would say the same thing whether or not there was a no-add provision, and he doesn't specifically address the fact that the parties had agreed that he couldn't add any language to the – to the bargaining agreement. He references it at ER 244. So that he quotes – he block quotes that section of the CBA, but he doesn't construe it. Is that correct? I mean, I see the block quote, but I don't see any interpretation of it. It's correct to say that he does not explicitly say that he's construing it. Thank you. But this Court's decisions have held that the arbitrator doesn't have to give a scholarly opinion as a court would. This is – this opinion is actually more reason than – So he didn't construe the no-add provision. And so even if we agree with your position that the question of whether the arbitrator could revise the contract was submitted to him, his decision to revise it was contrary to that language in the no-add provision, and he doesn't interpret that language. I mean, that's the thing that concerns me. So maybe you can explain why, even under our deferential standard, we would say that his decision draws its essence from the agreement, since it's directly contrary to that provision. Respectfully, Your Honor, I disagree that it's directly contrary to that provision.  Can you explain why that is? Yes. That provision says you can't change any provision. It doesn't say the agreement. It says you can't alter any provision of the agreement. Any provision of the agreement. But unlike West Coast Telephone, it doesn't say the written agreement. And West Coast Telephone, the no-add clause actually – Well, the agreement is a defined term, and it refers to the BLAs. Well, actually, you're correct, Your Honor, that the agreement is a defined term, but it does not just refer to the BLA. And this is at ER 271. Agreement is defined – it says shall mean this contract and all other agreements, memorandum of understanding, letters of agreement, and local supplemental agreements. So the question of what the agreement is under the no-add clause, we're really sort of begging the question. Is the agreement the written document that ASARCO – Do you think a provision of the agreement would refer to oral agreements, in your view? No. Do you think that's a reasonable interpretation of provision? That's not our position, Your Honor. Our position is that – is the question is if there was a mutual mistake, which the arbitrator found there was here and which ASARCO does not dispute in its petition to vacate the award, the question then becomes what is the agreement? Is the agreement the written document that incorrectly, in the arbitrator's view, stated – But the no-add provision refers specifically to the provisions of this agreement, not to the agreement in principle or any agreement in principle. What I would say to that, Your Honor, is are the provisions of this agreement the written provisions, or are they the provisions that the parties genuinely agree to? And I would – So you're saying like oral agreement, or are you saying a provision is something that people have in mind as opposed to the specific written provisions in agreement? The provisions that represent – that reflect – That's sort of a stretch, huh? Well, I don't think so. In fact, the – I realize, of course, that this is not binding on Your Honors, but the court in the Miami-Dade Public Schools case that we cite said exactly this. Yeah, I read that one. I didn't find it very persuasive, though. I mean, obviously, it's a trial court opinion in Florida. I understand that you didn't find it persuasive, but this court's role today is not to sit de novo looking at the no-add provision and interpret it as you would. Well, if the arbitrator had construed the no-add provision, you'd have a stronger argument, I would think. Well, again, I have to respectfully disagree. I believe that he did enough to be construing the no-add provision. By quoting it and then say, usually arbitrators don't add things, but I think I will here? Well, he didn't say that usually no – arbitrators don't add things. He said that where the union carries – or a party carries its heavy burden of establishing a mutual mistake, then the general principle that arbitrators don't add things doesn't stop me from ordering reformation. You're saying that he actually said the agreement is as he so-called reformed it. That's exactly right, Your Honor. The agreement. Right, and that's what the mutual – Did he say the provisions of the agreement are as I say them, or did he just refer to the agreement? You know, I'm not familiar enough with his award to say exactly what he said. He said – you know, he said it has been recognized that by numerous but not all arbitrators and other authorities, the interest of justice and fairness, the arbitrator can rewrite a contract to correct what appears to be an obvious mutual mistake. The arbitrator is persuaded that the case before him is such a case for the reasons that follow. So what if we look at the arbitrator's decision and we are not convinced that he took into account the no-add provision? We think maybe he – let me actually give you a slightly harder case perhaps. Let's say that he says, I'm aware of this provision, the no-add provision. I don't really like it. I think no-add provisions are oppressive, and I'm just not going to – I'm going to ignore it. I'm just going to go on general principles. That's not what happened here obviously, but let's say that was the situation. How do we review that? Your Honor, under this Court's case law and the Supreme Court's case law, I think you would still have to afford deference to the arbitrator's decision because, as the Court said most recently in the Drywall Dynamics case, the deference afforded to the awards of labor arbitrators is something like – That doesn't really answer the question because we often give deference in reversing. We give deference to trial judges in – to the learned trial judge, district judge. No comment. Not this one. We say we view this decision with deference reversed. So saying we give deference doesn't really answer the question. Okay, so we give deference, and let's say we find the arbitrator or we're convinced the arbitrator either willfully ignored or overlooked this provision. And I gave you the case where the arbitrator actually says, I don't like the provision, I'm not going to follow it, just to avoid a dispute about whether or not he did or didn't. So let's say, yes, we say, yes, the arbitrator is entitled to deference, and the answer is? Well, I – That does not tell us what happens next, which is the question I was asking you. As a good union lawyer, Your Honor, I would say that courts almost always have to defer to the decisions of labor arbitrators. Don't unions ever lose before arbitrators? Don't you think that having solid arbitration law – I mean, whatever the result in this case is, I mean, I would think that unions have an interest in having, you know, sound arbitration law, right? Because I assume you lose as often as you win. Sometimes more often. Huh? Sometimes more often. But what I would say to that, Your Honor, is – No, I'm not saying – you said as a good union lawyer, I don't view this as a union versus employer issue. I view it as a – you know, you're a repeat player, as, of course, is the other side, and as a repeat player, I would think that you would have a stake in having sound law. That's true, Your Honor. We also, of course, all – both parties, you're right, unions and employers, have a stake in ensuring that arbitrate – when they contract for an arbitration provision and agree that the arbitrator's word will be final, as they did in this case, then both parties have a stake in courts enforcing whatever the arbitrator's decision is, right or wrong. And there's a long line of cases – But there is a point at which courts say the arbitrator has gone beyond. I mean, you give deference, you give deference, you give deference, but at some point the rubber band snaps and we aren't, right? And that's a good thing, too. It's a good aspect of sound arbitration law. I'm just wondering where that snapping point is. If the arbitrator says, look, I know it, I see it in there, I don't like it, I'm not going to enforce it. You think we still have to defer? I do, Your Honor. Defer and affirm. I do. And that's consistent with this Court's recent decision in Drywall Dynamics in 2016, which said the only question is did the arbitrator look at the contract or not? If the arbitrator looked at the contract, that's the end of the court's inquiry. Well, of course, that case couldn't overrule a long line of other panel decisions saying it has to be a plausible interpretation of the contract. And in this case, he didn't even interpret the no-add provision. It's pretty hard to say it's plausible to interpret a no-add provision as allowing you to add. Well, as I said, Your Honor, I respectfully disagree on that point. I think the question is what are the provisions? You think it is plausible? Yes, absolutely. Based on your provision of the agreement, it's the same as an agreement in principle. Do I understand your argument on that? That that is a plausible interpretation of the provision of the no-add clause? Yes. That's something that the parties could submit to the arbitrator and that he could make that call, and he did make that call.  Okay. Thank you. I don't remember if you had a time lapse. We'll give you a minute for rebuttal in any event. I don't know if that's a negative number or a positive number. We'll give you one minute for rebuttal, if you wish to take it. We certainly agree that the Court's review of arbitrators' decisions is narrow. But the issue here is can an arbitrator simply reject the express words of an agreement and we submit it cannot be the law in arbitration? Well, this is in Florida. It appears to be the law in Florida. In parts of Florida, anyway. But we don't think it's the law here. In fact, it can be the law because we know it's the law in other places. So the question, your job is to persuade us why it shouldn't be the law in these parts. Right. Are you familiar with the George Day case that they cite? Yes. I'm just reading from it. I know it's an old case, but it's from a really fine court. And it says, By consenting to the arbitrator's consideration of the arbitrability question, which you did here, the parties bound themselves to his decision. They are bound, even if the award resulted from a misinterpretation of the law, faulty legal reasoning or erroneous legal conclusions. Isn't that the end of it? I don't think so, Your Honor, because I believe if you go on and read that decision, the court then analyzes under the deferential standard whether the arbitrator's decision is correct or incorrect. That uses the plausible language. Right. And the same thing happened in the Orion Pictures case where the court said, yes, the issue has been submitted to the arbitrator. That is, whether it's arbitrable. But we still review it, admittedly, under the deferential standard. But I submit that it cannot be the law, and it should not be the law, that express provisions in collective bargaining agreements can be disregarded by an arbitrator. Even when he finds that the parties made a mutual mistake in putting that together? Yes. Because what happens here is if you say that the no-add provision is not effective, it means that an arbitrator can then do whatever they want to, to a collective bargaining agreement, virtually without limit, because of the deferential standard of review. That's why people put these provisions in there, to limit what an arbitrator can do, how much power the arbitrator has, because that power is largely unreviewable. And so the parties say, yes, we'll let you make certain decisions, but within these confines, this is the limit of your power. Well, if he had said, as Judge Kaczynski posed, you know, I just don't like this provision at all about the copper bonus, so I'm going to change it, I think you'd have a good point. Right. But if he says, after a six-day hearing, they made a mistake, they made a scrivener's mistake, in a sense, by including this within that pension clause, so I'm going to undo that mistake, to actually enforce the agreement that the parties made. That's not something crazy. That sounds to me like he's given it a great deal of thought and is actually trying to effectuate the agreement of the parties. Isn't that what arbitrators do? Yes. Within the confines of the collective bargaining agreement, and the confines are you can't add a provision to the agreement. Thank you. Thank you.
judges: Kozinski, Ikuta, Gettleman